UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NO. 3:05CR121 (MRK) |
| | : | |
| | : | |
| WAYNE DAVENPORT | : | |

**RULING AND ORDER**

On March 24, 2006, a jury convicted defendant Wayne Davenport of Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Mr. Davenport now moves for a judgment of acquittal under Rule 29 of the *Federal Rules of Criminal Procedure*, or, in the alternative, for a new trial under Rule 33. Defendant's Motion for Judgment of Acquittal and a New Trial [doc. # 105]. The Court denies both motions for the reasons stated below.

**I.**

Mr. Davenport advances a number of arguments in support of his motions, many of which he previously asserted in pretrial motions that this Court has already rejected. For example, Mr. Davenport moves for judgment of acquittal on the ground that 18 U.S.C. § 922(g)(1) is unconstitutional on its face because the statute exceeds Congress' power under the Commerce Clause. *See* Defendant's Memorandum in Support of Motion for a Judgment of Acquittal and a New Trial ("Def's Mem.") [doc. # 106], at 10. Alternatively, Mr. Davenport argues that even if the statute is not unconstitutional on its face, a conviction under the statute requires proof beyond a reasonable doubt that the gun or ammunition at issue either substantially affected interstate or foreign commerce or was an "item of interstate or foreign commerce" at the time of Mr. Davenport's possession. Mr.

Davenport also objects to the Court's jury instruction on the same basis. Def's Mem. at 10, 19.[1]

As this Court has previously ruled [doc. # 89], Mr. Davenport's arguments are contrary to binding Second Circuit authority. *See United States v. Santiago*, 238 F.3d 213, 216 (2d Cir. 2001) (upholding the constitutionality of § 922(g)(1)); *id.* (noting that "§ 922(g) only requires a 'minimal nexus' between possession of a firearm by a convicted felon and interstate commerce"); *United States v. Carter*, 981 F.2d 645, 648 (2d Cir. 1992) (approving a jury instruction that "the interstate commerce element of § 922(g)(1) was met if the firearm in question previously had traveled in interstate commerce" and that "[i]t is sufficient . . . that the firearm allegedly possessed or received by the defendant had at some point previously traveled across a state line" (alterations in original and internal quotation marks omitted)). Mr. Davenport admits as much but seeks to preserve these issues

---

[1] The Court instructed the jury as follows:

    The third element that the Government must prove beyond a reasonable doubt is that the firearm or ammunition that Mr. Davenport is charged with possessing was in or affecting interstate or foreign commerce.
    This means that the Government must prove that at some time prior to Mr. Davenport's possession, the firearm or ammunition had traveled in interstate or foreign commerce. It is sufficient for the Government to satisfy this element by proving that at any time prior to the date charged in the Indictment, the firearm or ammunition crossed a state line or the United States border. It is not necessary that the Government prove that Mr. Davenport himself carried it across a state line, nor must the Government prove who carried it across or how it was transported. It is also not necessary for the Government to prove that Mr. Davenport knew that the firearm or ammunition had previously traveled in interstate or foreign commerce.
    In this regard, there has been evidence that the firearm in question was manufactured in a different state than the state in which Mr. Davenport is charged with possessing it, and that the ammunition in question was manufactured in a foreign country, different from the state within the United States in which Mr. Davenport is charged with possessing it. You are permitted to infer from these facts that the firearm and ammunition traveled in interstate or foreign commerce; however, you are not required to do so.

for argument on appeal. Def's Mem. at 10 (acknowledging that arguments are "foreclosed by Second Circuit precedent"). The Court adheres to its prior ruling and denies Mr. Davenport's Motion for Judgment of Acquittal on these grounds. To the extent that Mr. Davenport contends that the Government failed to carry its burden of establishing the commerce element of the offense beyond a reasonable doubt, the Court also disagrees. The evidence was sufficient to permit a trier of fact to conclude beyond a reasonable doubt that the firearm and ammunition had traveled in interstate or foreign commerce before the date of the offense.

Mr. Davenport also re-asserts his pretrial argument that the Court should have bifurcated the trial, with the jury deciding the issues of possession and commerce before learning of his prior felony conviction. *Id.* at 20. In the alternative, Mr. Davenport argues that, in light of his stipulation to the prior conviction element of the offense, the Court should have precluded the jury from learning of his conviction. *Id.* Once again, Mr. Davenport acknowledges, as this Court has previously ruled, that these arguments are contrary to binding Second Circuit authority, and therefore, the Court adheres to its earlier ruling rejecting these arguments. Order [doc. # 76]; *see, e.g., United States v. Amante (In re United States)*, 418 F.3d 220, 222-23 (2d Cir. 2005) (noting that bifurcation is appropriate only in "extraordinarily unusual case[s]" and that "[w]here the prior conviction is essential to proving the crime, it is by definition not prejudicial" (internal quotation marks omitted and alteration in original)); *United States v. Chevere*, 368 F.3d 120, 121 (2d Cir. 2004) ("[A] district court has no discretion, in a prosecution under § 922(g)(1), to allow a defendant to stipulate to a prior conviction and thereby entirely withhold that element of the offense from the jury's consideration.").

## II.

Mr. Davenport also challenges a number of the Court's rulings at trial. For example, Mr.

Davenport asserts that the Court should not have allowed Detective Kimberly Biehn to testify, over his objection, that in her experience the presence of oils on guns, magazines and bullets reduces the likelihood of recovering fingerprints from those items. Def's Mem. at 18. Before trial, Mr. Davenport moved to exclude Detective Biehn's testimony on the basis of Rule 702 of the *Federal Rules of Evidence* and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See* Defendant's Motion to Exclude Expert Testimony of Kimberly Biehn [doc. # 88]. In response, the Court held a *Daubert* hearing [doc. # 91] before trial and outside the presence of the jury, at which Detective Biehn testified. At the hearing, Mr. Davenport did not object to Detective Biehn testifying that she had inspected the firearm and ammunition involved in this case and did not find any fingerprints. However, he did object to Detective Biehn testifying that she had never found fingerprints on any of the 200 or more firearms that she had inspected during her career and to her giving any explanation for why she had not found any prints on the firearm and ammunition in question.

Before the hearing, the Court ruled, with no objection from the Government, that Detective Biehn would be prohibited from testifying that she had never found a fingerprint on any of the firearms she had inspected over the years. However, at the conclusion of the hearing, the Court ruled that Detective Biehn would be permitted to testify, based upon her training and experience, regarding the various reasons why she was unable to find any useable prints on the firearm and ammunition involved in this case. These reasons included the characteristics of the firearm (such as its textured grip), the discharge of the firearm (and therefore its temperature), and the presence of oils on the firearm. Thus, in explaining why she did not find any prints in this case, the Court limited Detective Biehn to addressing only the particular firearm and ammunition involved in this

case.  The Court ruled that Mr. Davenport could pursue any alleged inadequacies in Detective Biehn's training, experience, or inspection during his cross-examination.

Mr. Davenport now renews his pretrial arguments regarding Detective Biehn. Specifically, Mr. Davenport argues that Detective Biehn's testimony was not reliable because she had never conducted controlled tests on firearms and because there was no evidence that her views regarding the effect of texture and oils on the discovery of prints were the subject of peer-reviewed articles of general acceptance in the scientific community. Def's Mem. at 19. Mr. Davenport also contends that Detective Biehn's testimony was not useful to the jury because "it had no relevance to the facts of this case." *Id.*

The Court disagrees. Detective Biehn has been a police officer for fifteen years. She has worked as an investigator in the Major Crimes Unit for eight years, during which time she has tested hundreds of firearms and other items for fingerprints. Detective Biehn testified to her on-the-job training, as well as to her attendance at numerous seminars and training courses on investigative techniques, including the techniques used to obtain fingerprints. Detective Biehn, who has testified dozens of times in state court, recounted for the jury the techniques she used to search for fingerprints on the firearm and ammunition at issue here and the various factors that made it difficult to find useable prints on the particular firearm and ammunition involved in this case. Her testimony focused on the specific firearm and ammunition in this case and was based on her experience and training. The Court believes that Detective Biehn's testimony – which did not tie the firearm or ammunition to Mr. Davenport, but which merely explained the various factors that would make it difficult to find a print on the surfaces of these items – was sufficiently credible and reliable to be useful to the jury. Indeed, it would seem to be a matter of simple commonsense that the texture of

an object and oils found on it might compromise one's ability to find useable fingerprints on an object. *See, e.g.*, *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042-43 (2d Cir. 1995) (stating that "[t]he decision to admit expert testimony is left to the broad discretion of the trial judge and will be overturned only when manifestly erroneous" and that the expert witness "had both the practical experience and necessary academic training to testify"); *United States v. Locascio*, 6 F.3d 924, 936-37 (2d Cir. 1993) (upholding trial court's discretion to admit expert testimony of FBI agent on the basis of agent's years of experience, which qualified as "specialized experience"). Detective Biehn's testimony was also relevant to the case at hand.  Although nightly television dramas feature mythical crime scene investigators who magically pluck fingerprints from the most unlikely of surfaces in the most unlikely of conditions, such is not reality.  It seems useful to permit a lay jury to learn from a real investigator, based on her own training and extensive experience, the practical difficulties of finding useable prints on the specific items in question. *Cf. id.* at 937 (confirming proper admission of FBI agent's testimony in part because potentially inaccurate public perceptions of organized crime families made agent's testimony particularly useful to the jury).

Mr. Davenport also renews another issue addressed at length at trial – namely, what instructions the jury would receive regarding the evidence Officer Pereira presented of Mr. Davenport's flight.  This evidence consisted of Officer Pereira's testimony that he saw Mr. Davenport run away after he approached Mr. Davenport and shortly before he saw Mr. Davenport discard the firearm. *See* Defendant's Motion *In Limine* Regarding Flight Evidence and Jury Instruction [doc. # 87].  The Court heard argument on this issue before trial and also discussed this issue at length with counsel during several conferences focused on the jury charge. The Court allowed the Government to introduce evidence of Mr. Davenport's flight from Officer Pereira.  The

Court also permitted Mr. Davenport to adduce evidence denying or explaining his flight and to argue to the jury that there were innocent or other reasons for his flight from the police. While Mr. Davenport chose not to present any evidence to explain his flight, his counsel argued to the jury that his flight from the police was entirely innocent.[2]

In this case, the jury heard evidence at trial that Mr. Davenport was a convicted felon with no gun permit when a police officer approached him. Officer Pereira testified that when he ordered Mr. Davenport to come to his marked cruiser, Mr. Davenport ran away and refused to stop, even though he was being chased by a uniformed police officer. Officer Pereira also testified that he saw Mr. Davenport discard a firearm while he was fleeing and shortly after he had begun running. When police ultimately caught Mr. Davenport and arrested him, they located the discarded firearm where Officer Pereira had seen Mr. Davenport throw it, and they also found a bullet in his pocket that matched both the caliber of the firearm and the eight bullets remaining in the firearm.

Mr. Davenport requested the following jury instruction on flight:

---

[2] In his opening statement, counsel for Mr. Davenport stated:
Mr. Davenport had the bad luck of being a black man who walked onto a crime scene at the wrong time. Officer Pereira confronted Mr. Davenport and he ran away. There's no doubt he's guilty of running but he's guilty of nothing more. Why did he run? Unfortunately, it's a sad fact of life that not all confrontations with the police in the inner city are safe, even when you have done nothing wrong.

In closing argument, counsel for Mr. Davenport returned to this theme:
Let's talk for a minute about Mr. Davenport running. You heard the testimony, couple of witnesses in this case, police officers [said that this was a] relatively high crime area, lot of confrontations between the police and people in the neighborhood. An unfortunate reality of life, not all these confrontations are proper. You heard [a witness] say, you got good cops and you got bad cops, just like everybody else in the world.

> You have heard the evidence that Mr. Davenport ran after seeing a police officer. I instruct you that this evidence cannot be considered by you in determining whether Mr. Davenport possessed the gun and ammunition. However, if you find, based on other evidence that Mr. Davenport possessed the gun and ammunition, you may then consider the evidence of his flight to decide whether the possession of the gun or ammunition was knowing and not by accident or mistake.

Instead, the Court gave the following instruction to the jury, to which Mr. Davenport duly objected:

> You have heard evidence that Mr. Davenport fled. If proved, the flight of a defendant after he knows he is to be accused of a crime may tend to prove that the defendant believed that he was guilty. It may be weighed by you in this connection, together with all the other evidence. However, flight may not always reflect feelings of guilt. There may be reasons for flight which are fully consistent with innocence. These may include fear of being apprehended or unwillingness to confront the police. Moreover, feelings of guilt, which are present in many innocent people, do not necessarily reflect actual guilt.
>
> You are specifically cautioned that evidence of a defendant's flight may not be used by you as a substitute for proof of guilt. Flight does not create a presumption of guilt.
>
> Whether or not evidence of flight shows that Mr. Davenport believed that he was guilty, and the significance, if any, to be given to his feelings on this matter, are for you to determine.

In the Court's view, the foregoing instruction on flight was both consistent with governing case law and was suitably balanced, given the evidence presented. *See, e.g., United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) ("It is well settled that flight can, in certain circumstances, evidence consciousness of guilt."); *United States v. Salameh*, 152 F.3d 88, 157 (2d Cir. 1998) ("The jury was entitled to infer consciousness of guilt from the facts surrounding [the defendant's] flight."). Accordingly, Mr. Davenport is not entitled to a new trial on the basis of the Court's flight instruction.

**III.**

Mr. Davenport lastly argues that he is entitled to a new trial on the ground that the jury's verdict was against the weight of the evidence. In considering a motion under Rule 33, the Court

is entitled to weigh the evidence and the credibility of witnesses, but it is only when "exceptional circumstances can be demonstrated that a trial judge may intrude upon the jury's function of credibility assessment." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). Such exceptional circumstances may include patently incredible testimony or testimony that defies physical realities. *Sanchez,* 969 F.2d at 1414. Ultimately, the test on a motion for a new trial is "whether it would be a manifest injustice to let the guilty verdict stand." *Ferguson*, 246 F.3d at 134 (internal quotation marks and citations omitted). Therefore, a new trial motion should be granted only if a court perceives that a serious miscarriage of justice has occurred or if the court has "a real concern that an innocent person may have been convicted." *Sanchez*, 969 F.2d at 1413-14.

Here, Mr. Davenport argues that he is entitled to a new trial because the Government's proof rested entirely on the testimony of Officer Pereira, whose testimony "was implausible and fraught with inconsistencies." Def's Mem. at 11. The Court disagrees. As an initial matter, the Government's case that Mr. Davenport possessed the firearm and ammunition in question was not based entirely on Officer Pereira's testimony. The Government also presented CAD recordings taken contemporaneously; the testimony of Officer Pisanelli, which corroborated Officer Pereira's own testimony; the firearm itself, which police recovered from the location where Officer Pereira testified Mr. Davenport had thrown it and which also bore some brick dust consistent with Office Pereira's testimony; and the bullet, which police recovered on Mr. Davenport's person at the time he was arrested.

Furthermore, the Court did not consider Officer Pereira's testimony implausible, nor does the Court believe that a rational jury would be required to disbelieve Officer Pereira. There certainly

were some inconsistencies between Officer Pereira's testimony and some of the other evidence in the case, including the CAD recordings and Officer Pisenelli's testimony. Mr. Davenport's counsel ably exploited those discrepancies at trial. However, the Court believes that a rational jury could have concluded that many of the inconsistencies were relatively minor in nature or the likely result of the frenetic nature of the chase and the passage of time since the events in question. Moreover, Officer Pereira's testimony was also substantially corroborated by the same CAD recordings and Officer Pisenelli's testimony. In the end, the Court cannot say that the jury's assessment of the witnesses' credibility represented a serious miscarriage of justice or that an innocent man was convicted. Accordingly, the Court will not set aside the verdict on the ground that it was counter to the weight of the evidence.

## IV.

Accordingly, the Court DENIES Defendant's Motion for Judgment of Acquittal and a New Trial [doc. # 105].

IT IS SO ORDERED,


/s/      Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **June 27, 2006**